IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-02143-KLM

HOMEWATCH INTERNATIONAL, INC., a Colorado corporation,

　　Plaintiff,

v.

SUZANNE NAVIN, an individual,

　　Defendant.

_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Defendant's **Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim** [#10][1] (the "Motion"). Plaintiff filed a Response [#13] in opposition to the Motion, and Defendant filed a Reply [#19]. The Court has reviewed the briefing on the Motion, the case file, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Motion [#10] is **DENIED**.

## I. Background[2]

This action arises from a franchise agreement ("Franchise Agreement") and nondisclosure/noncompetition agreement ("NDA") entered into on June 8, 2006, between Plaintiff Homewatch International, Inc. ("Plaintiff") and Prominent Home Care, Inc.

---

[1] "[#10] is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Order.

[2] The Court construes all of the well-pled allegations in the Complaint in favor of Plaintiff, the non-moving party. *See Barnes v. Harris*, 783 F.3d 1185, 1191-92 (10th Cir. 2015).

("Prominent").³ *Compl.* [#3] at 1. Defendant Suzanne Navin ("Defendant"), who is the sole shareholder and officer of Prominent, signed the Franchise Agreement and NDA (collectively, the "Agreements"). *Id.* Plaintiff alleges that Defendant breached the Agreements by wrongfully operating a business in direct competition with Plaintiff. *Id.*

Plaintiff alleges that the Franchise Agreement granted Prominent the rights to use Plaintiff's "licensed operation methods and exclusive trademarks, service marks, logotypes, commercial symbols, and trade names." *Id.* at 2. In exchange, Prominent agreed to be bound by the restrictive covenants contained in the Agreements, including the "Post-Termination Covenant Not to Compete" contained in the Franchise Agreement. *Id.* The Franchise Agreement expired on June 30, 2016. *Id.* at 3. On July 1, 2016, Defendant started a company that directly competes with Plaintiff, which Plaintiff contends is a breach of the Agreements. *Id.*

Plaintiff filed the Complaint in state court, and Defendant removed the action to this Court on August 24, 2016. *Notice of Removal* [#1]. The Complaint raises three claims for relief: (1) Breach of Contract, (2) Unjust Enrichment, in the alternative, and (3) Injunctive Relief. *See Compl.* [#3] at 3-4. Defendant now moves to dismiss all claims. *See Motion* [#10]. Defendant argues that the Agreements are not binding on her as an individual because she signed them in her official capacity only, and that the noncompetition covenants in the Agreements are void pursuant to Colo. Rev. Stat. § 8–2–113(2). *Id.* at 6, 15. Defendant also argues that the unjust enrichment claim must fail because it is based on the same unenforceable noncompetition provisions. *Id.* at 23.

---

³ These Agreements are attached to the Complaint. *See Franchise Agreement* [#3] at 6-45; *NDA* [#3] at 46-49.

## II. Legal Standard

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994); Fed. R. Civ. P. 12(b)(6) (stating that a complaint may be dismissed for "failure to state a claim upon which relief can be granted"). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind,* 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted). To withstand a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) ("The complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." (quoting *Twombly*, 550 U.S. at 570)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (brackets in original; internal quotation marks omitted).

To survive a motion to dismiss pursuant to Rule 12(b)(6), the factual allegations in

the complaint "must be enough to raise a right to relief above the speculative level." *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," a factual allegation has been stated, "but it has not show[n] that the pleader is entitled to relief," as required by Rule 8(a). *Iqbal*, 552 U.S. at 679 (second brackets added; citation and internal quotation marks omitted).

### III.  Analysis

Interpretation of a contract is a matter of state law. *DIRECTV, Inc. v. Imburgia*, 136 U.S. 463 (2015). The Franchise Agreement also provides that the "Agreement will be interpreted under the laws of the State of Colorado, and any dispute between the parties will be governed by and determined in accordance with the substantive internal laws of the State of Colorado . . . ." [#3] at 34. Additionally, when a federal court sits in diversity, it is required to apply the most recent applicable substantive state law pronounced by the state's highest court. *Mincin v. Vail Holdings, Inc.*, 308 F.3d 1105, 1108 (10th Cir. 2002). For these reasons, the Court applies Colorado law here.

The primary goal of contract interpretation is to give effect to the written expression of the parties' intent. *Ad Two, Inc. v. City & Cty. of Denver*, 9 P.3d 373, 376 (Colo. 2000). Where the words of a written contract are clear and unambiguous, its meaning is to be ascertained in accordance with its plainly expressed intent. *M & G Polymers USA, LLC v. Tackett*, 135 S. Ct. 926, 933 (2015). Interpretation of a contract is a question of law where the contract's construction does not depend on extrinsic evidence and where the language is susceptible to only one reasonable interpretation. *Zink v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 13 F.3d 330, 332 (10th Cir. 1993); *see also Stegall v. Little Johnson Assoc.,*

*Ltd.*, 996 F.2d 1043, 1048 (10th Cir. 1993) (applying Colorado law); *Evensen v. Pubco Petroleum Corp.*, 274 F.2d 866, 872 (10th Cir. 1960). Interpretation of a contract is a question of fact only when a contract term is found to be ambiguous. *Dorman v. Petrol Aspen, Inc.*, 914 P.2d 909 (Colo. 1996). The provisions of a contract are ambiguous when they are subject to more than one reasonable interpretation. *Union Ins. Co. v. Houtz*, 883 P.2d 1057 (Colo. 1994).

### A. Whether the Noncompetition Covenants Are Binding on Defendant

First, the Court will address Defendant's argument that she is not personally bound by the noncompetition covenants because she signed the Agreements in her official capacity only. *Motion* [#10] at 1. The Franchise Agreement provides the following in § 10.2, titled "Post-Termination Covenant Not to Compete":

> Upon termination or expiration of this Agreement for any reason, Franchisee and its officers, directors, shareholders, limited liability company members and managers, and/or partners or other owners (as applicable) agree that, for a period of two years commencing on the effective date of termination or expiration, or the date on which Franchisee ceases to conduct business, whichever is later, **neither Franchisee nor its officers, directors, shareholders, limited liability company managers and members, partners or other owners (as applicable) shall have any direct or indirect interest** (through the spouse or children of Franchisee or its owners or otherwise) **as a disclosed or beneficial owner, investor, partner, director, officer, employee, consultant, representative or agent or in any other capacity in any Competitive Business**, as defined above, **located or operating within a twenty-five (25) mile radius** of Franchisee's Licensed Location or any other HOMEWATCH CAREGIVERS Business' location . . . .

[#3] at 31 (emphasis added).[4] The Franchise Agreement is signed by Paul A. Sauer,

---

[4] Normally, when considering a motion to dismiss, the Court must disregard facts supported by documents other than the complaint unless the Court first converts the motion to dismiss into a motion for summary judgment. *See Jackson v. Integra Inc.*, 952 F.2d 1260, 1261 (10th Cir. 1991). However, the Court may consider documents outside of the complaint on a motion to

-5-

Plaintiff's Chief Executive Officer, and Defendant, as Administrator of Prominent. *Id.* at 37. Defendant argues that this covenant does not bind Defendant as an individual because she signed solely as "Administrator." *Motion* [#10] at 7.

However, as Plaintiff argues, Defendant fails to mention in the Motion [#10] that she also executed a Guaranty, which is attached as "Exhibit II to the Franchise Agreement," and provides in relevant part that Defendant "[a]grees personally to be bound by, and personally liable for the breach of, each and every provision in the [Franchise] Agreement." *Guaranty* [#3] at 39. The Guaranty also specifically provides that the signatories "will be bound by the covenant not to compete and other restrictive covenants . . . contained in the Agreement." *Id.* at 40. Thus, the Guaranty states unambiguously that the parties intended to require Defendant – as an individual – to comply with the noncompetition covenants.

Defendant raises three arguments with respect to the Guaranty. First, Defendant argues that "Plaintiff has not brought an action to enforce the Guaranty." *Reply* [#19] at 9. This argument is unavailing because the Guaranty was included with the Complaint [#3] and is an attachment to the Franchise Agreement. Thus, on the face of the documents, the Guaranty appears to be part of the Franchise Agreement and the Court therefore may consider the Guaranty as well.

Second, Defendant argues that "the Guaranty does not appear to have been signed

---

dismiss in three instances. First, the Court may consider outside documents pertinent to ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1). *See Pringle v. United States*, 208 F.3d 1220, 1222 (10th Cir. 2000). Second, the Court may consider outside documents subject to judicial notice, including court documents and matters of public record. *See Tal v. Hogan*, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006). Third, the Court may consider outside documents that are both central to the plaintiff's claims and to which the plaintiff refers in her complaint. *See GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1384 (10th Cir. 1997). All of the documents cited in this section are referred to in the Complaint [#3] and are central to Plaintiff's claims.

by Navin." *Reply* [#19] at 9. On what appear to be signature lines, "Suzanne Navin" (Plaintiff's name) is written by hand along with the names of two other individuals. *Guaranty* [#3] at 40. While the Court acknowledges that it is unclear whether the handwritten names are signatures, it notes that the name is handwritten and appears similar to Defendant's signatures on other pages of the documents. However, it would be inappropriate for the Court to make this determination because whether the Guaranty was signed by Defendant is a question of fact to be determined by a jury.[5] *See Lewin v. Barry*, 63 P. 121, 123 (Colo. App. 1900) (stating that "it was a question of fact for the jury to determine when the guaranty was signed"); *S. Colorado MRI, Ltd. v. Med-All., Inc.*, 166 F.3d 1094, 1098 (10th Cir. 1999) ("Whether parties have entered into a contract is a question of fact."). It is plausible that a jury could find in favor of Plaintiff on this issue. *See Twombly*, 550 U.S. at 570.

Third, Defendant points to the Guaranty's language that the guarantor (Defendant) "shall render any payment or performance required under the Agreement upon demand if Franchisee fails or refuses punctually to do so," in order to argue that the Franchisee (Prominent) has not failed to perform, and that therefore Defendant's personal obligations under the Guaranty have not been triggered. *Reply* [#19] at 9-10. This argument ignores the plain language of the Guaranty, which states in subsection (e): "Each of the undersigned [including Defendant] consents and agrees to all of the following . . . . He or she will be bound by the covenant not to compete and other restrictive covenants, the

---

[5] Defendant also argues that this may create a statute of frauds problem. However, because the trier of fact has not yet determined whether the document is signed, the Court may not address at this time whether the statute of frauds applies. *See Reply* [#19] at 9.

confidentiality provisions, the audit provisions, and the indemnification provisions contained in the Agreement." *Guaranty* [#3] at 39-40. There is no qualifying language stating that Prominent must first fail to perform in order for Defendant to be bound by the covenants.

The Court concludes that Plaintiff has sufficiently alleged that the individuals who signed the Guaranty, including Defendant, are bound by the covenant not to compete contained in the Franchise Agreement. *See M & G Polymers USA*, 135 S. Ct. at 933 (stating that where the words of a contract are clear and unambiguous, the meaning must be ascertained in accordance with the plainly expressed intent of the parties). Thus, construing the allegations in the light most favorable to Plaintiff, the Court concludes that Plaintiff has sufficiently stated a claim for breach of contract on these grounds.[6]

**B.     Whether the Noncompetition Covenants Are Void *Ab Initio***

Defendant argues that, even if the noncompetition covenants contained in the Franchise Agreement and NDA are binding on Defendant in her individual capacity, the Motion [#10] should still be granted because they are void pursuant to Colorado's statute governing noncompetition covenants.

Colorado has a strong public policy against non-compete clauses. *DBA Enters. v. Findlay*, 923 P.2d 298, 302 (Colo. App. 1996). Colo. Rev. Stat. § 8–2–113(2) provides: "Any covenant not to compete which restricts the right of any person to receive compensation for performance of skilled or unskilled labor for any employer shall be void,"

---

[6] The Court need not address Defendant's other arguments that she cannot be bound (1) by her signatures clearly made in her capacity as Prominent's Administrator, or (2) by the covenant barring competition by "Franchisee [and] its officers, directors, shareholders . . . or other owners" because contracts cannot be enforced against non-parties. *Motion* [#10] at 6-15. Similarly, the Court also does not address whether the separate NDA is binding.

with certain exceptions that are narrowly construed. *Nat'l Propane Corp. v. Miller*, 18 P.3d 782, 787 (Colo. App. 2000). The exceptions are as follows:

> (a) Any contract for the purchase and sale of a business or the assets of a business;
>
> (b) Any contract for the protection of trade secrets;
>
> (c) Any contractual provision providing for recovery of the expense of educating and training an employee who has served an employer for a period of less than two years;
>
> (d) Executive and management personnel and officers and employees who constitute professional staff to executive and management personnel.

§ 8–2–113(2). Any noncompetition covenant that fails to meet one of these exceptions is not merely voidable, but void *ab initio*. *Mgmt. Recruiters of Boulder, Inc. v. Miller*, 762 P.2d 763, 765 (Colo. App. 1988).

The parties appear to agree that § 8–2–113(2) applies to the noncompetition covenant in this matter. However, they disagree on whether the exception at subsection (a) applies. Defendant argues that the noncompetition covenant is void because the Franchise Agreement does not constitute "a contract for the purchase and sale of a business or the assets of a business." *Motion* [#10] at 17. She argues that Prominent did not purchase a business or the assets of a business, but rather "purchased only a *license* to use [Plaintiff's] operation methods, trademarks, and other intangible intellectual property for a term of ten years." *Id.* at 20-21. Defendant further argues that the noncompetition covenant does not fulfill the purpose of the "sale of a business" exception, which is to protect the good will of the business for the benefit of the purchasing party. *Id.* at 17.

While acknowledging that the Colorado courts have not directly addressed the issue of whether establishment of a franchise constitutes the sale of a business, Defendant cites

to two main cases in support of her argument. First, she cites *Gold Messenger, Inc. v. McGuay*, where the Colorado Court of Appeals stated that it was "questionable whether the creation of a franchise arrangement constitutes the sale of a business." 937 P.2d 907, 909-11 (Colo. App.1997). Second, Defendant cites to *Keller Corp. v. Kelley*, where the appellate court again declined to decide the issue. 187 P.3d 1133, 1138 (Colo. App. 2008).

Plaintiff contends that the rationale for the "sale of a business" exception warrants upholding the covenants because the protection of Plaintiff's goodwill is the basis for the dispute in this matter. *Keller* supports Plaintiff's proposition that goodwill is the product that is sold by the franchisor to the franchisee in a franchise agreement. 187 P.3d at 1138 (stating that "the primary characteristic of a franchise is the license given to the franchisee to trade upon and exploit the franchisor's goodwill"). As Plaintiff argues, the Franchise Agreement allowed Defendant "to build goodwill without having to establish her own brand recognition or methods" and "to grow [the business] at a more rapid pace than a previously unbranded, unknown business without well-defined operational standards." *Response* [#13] at 7.

Case law supports Plaintiff's position. Not only does dicta in *Keller* support Plaintiff's position, but Plaintiff also cites to *DBA Enters.*, where the Colorado Court of Appeals upheld a noncompetition provision prohibiting the seller of a franchise from competing with the purchaser, and specifically found that the applicable exception was the "purchase and sale of a business" under § 8–2–113(2). 923 P.2d at 300-01. Although *DBA Enters.* concerned the prohibition of a *seller* from competing with the *purchaser*, and in the present matter the tables are turned, the Court sees no reason why the same rationale would not apply here. *See id.* Furthermore, the District Court of Colorado has previously held that

the business purchase and sale exemption is applicable to franchises. *Big O Tires, LLC v. JDV, LLC*, No. 08-CV-1046-WYD, 2008 WL 4787619, at *4 (D. Colo. Oct. 31, 2008) ("A franchise is analogous to the sale of business and, therefore, is exempt from the prohibition in § 8–2–113(2)(a).") (citing *I Can't Believe It's Yogurt v. Gunn*, No. 94-OK-2109-TL, 1997 WL 599391, at *21 (D. Colo. Apr. 15, 1997)).

Because the Court finds that Plaintiff has sufficiently alleged that the Franchise Agreement is subject to at least one of the exceptions to the general prohibition on noncompetition covenants, the Court does not reach the issue of whether the Agreement falls under other exceptions to § 8–2–113(2), nor does it reach the parties' arguments with respect to the enforceability of the NDA.

### C. Plaintiff's Unjust Enrichment Claim

Plaintiff, as an alternative to her breach of contract claim, also brings a claim for unjust enrichment. *Compl.* [#3] at 4. Defendant raises several arguments that this claim should be dismissed. *Motion* [#10] at 23-25. In the Reply, Defendant points out that Plaintiff's Response fails to address Defendant's motion to dismiss this claim. *Reply* [#19] at 19. Nonetheless, the Court addresses this claim on the merits.

First, Defendant argues that Defendant is not bound by the noncompetition covenant because Prominent, not Defendant, promised not to compete. *Motion* [#10] at 23. As discussed above, the Court finds that Plaintiff has sufficiently alleged that Defendant is personally bound by the noncompetition covenant.

Second, Defendant argues that the noncompetition covenant is void as against public policy and therefore cannot serve as the basis for an unjust enrichment claim. *Motion* [#10] at 24-25. As discussed above, Plaintiff has sufficiently alleged that the

noncompetition covenant falls within an exception to the general bar on noncompetition covenants.

Third, Defendant argues that Plaintiff cannot assert a claim for unjust enrichment because an express contract covers the same subject matter. *See Motion* [#10] at 23; *see, e.g.*, *West Ridge Group, LLC v. First Trust Co.*, 414 F. App'x 112, 120 (10th Cir. 2011) (stating that unjust enrichment "is not available as a mere alternative legal theory when the subject is covered by an express contract"). However, courts have held that a party can recover on an unjust enrichment claim "when the party will have no right under an enforceable contract." *MidCities Metropolitan Dist. No. 1 v. U.S. Bank Nat. Ass'n*, No. 12-cv-03322-LTB, 2013 WL 3200088, at *8 (D. Colo. June 24, 2013) (citing *Interbank Investments, LLC v. Eagle River Water and Sanitation Dist.*, 77 P.3d 814, 816 (Colo. App. 2003)). Here, there has not yet been a determination that the alleged conduct is governed by an express, enforceable contract. In fact, Defendant vehemently disputes that the contract is binding on her.

For these reasons, the Court finds that dismissal of Plaintiff's claim for unjust enrichment would be premature at this time.

## IV. Conclusion

Based on the foregoing,

IT IS HEREBY **ORDERED** that the Motion [#10] is **DENIED**.

BY THE COURT:

Dated: September 20, 2017

Kristen L. Mix
United States Magistrate Judge